UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOW CORNING CORPORATION,

     Plaintiff/Counter-Defendant,

                                               Case Number 09-10429

v.                                      Honorable Thomas L. Ludington

WEATHER SHIELD MANUFACTURING, INC.,
SNE ENTERPRISES, INC., and PEACHTREE
DOORS AND WINDOWS, INC.

     Defendants/Counter-Plaintiffs.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

     This case arises from Weather Shield Manufacturing, Inc.'s ("Weather Shield") interest beginning in about September 2002 in using a silicone sealant known a "InstantGlaze" as a bedding or glazing compound in the manufacture of windows and doors. Dow Corning Corporation manufactures InstantGlaze and, of course, was interested in selling its product for Weather Shield's application.

     Dow Corning had reason to believe InstantGlaze would perform well in this application and their confidence is reflected in their customer literature. Weather Shield, who had historically used a glazing tape for this application, was also hopeful that they would realize a number of benefits from their use of InstantGlaze. Weather Shield and Dow Corning agree, to a certain extent, that Weather Shield's use of InstantGlaze was an experiment.

     Weather Shield was not pleased with the results of the experiment and believes InstantGlaze can not be commercially used as a window bedding or glazing compound. Dow Corning disagrees. InstantGlaze is a "good" within the meaning of Article 2 of the Uniform Commercial Code and thus,

the provisions of Article 2 govern this dispute unless the code's provisions have been varied by agreement of the parties.  U.C.C. § 1-201.

Dow Corning filed a motion for summary judgment on July 2, 2010 [Dkt. #23] contending that it did not warrant the use of its product as a glazing compound, that implying a warranty of fitness for a particular purpose could not be squared with the facts and that, in any event, the sales contract included a disclaimer of any and all warranties. The parties' initial round of motion papers extensively surveyed the history of their efforts to investigate the product and their efforts to make the experiment work. The parties also sought to demonstrate the extent to which the sales contract and associated communications were or were not consistent with the expression of an express warranty or that any such warranty was or was not disclaimed.

The Court was confident in examining the sales contract papers that Weather Shield did not negotiate a written express warranty for InstantGlaze; the Court was hesitant to conclude from the parties' explanation of the facts that an unwritten express warranty was not intended.  Similarly, however, the parties' transactional papers were less than clear in establishing that the parties agreed that Dow Corning disclaimed any warranties as a matter of law. Supplemental briefs were requested.

The supplemental papers confirm the Court's initial impression: the sales contracts do not address whether InstantGlaze was or was not being warranted or, if it was, whether any warranty was being disclaimed.  Weather Shield and Dow Corning both hoped, in true entrepreneurial fashion, that InstantGlaze would perform well for Weather Shield and thus, not even wishing to consider the possibility of an unsuccessful experiment, they did not address the issue.  Enough facts have been advanced, however, to conclude that there are legitimate questions that must be sorted out by a jury.

The facts of the case do not need to be repeated in this opinion. With the exception of a few points the parties appear to agree that the expression of the facts in the Court's prior opinion is not too far off the mark. Dow Corning did note in its January 24, 2011 supplemental brief [Dkt. #40] that the Court had incorrectly stated that the March 22, 2004 Letter Agreement was the fourth agreement between the parties when it was, in fact, the second agreement between the parties. Dow Corning is correct, and the Court acknowledges that the March 22, 2004 Letter Agreement is the second agreement between the parties. Moreover, the parties supplemental papers have been helpful in reaching several decisions that need not be resolved by the jury. Dow Corning is entitled to summary judgment on Weather Shield's claim for breach of a warranty for particular purpose. Weather Shield is a sophisticated manufacturer that extensively investigated and tested InstantGlaze before it entered in to the agreement to purchase the product from Dow Corning and did not rely on Dow Corning's exclusive expertise.

Similarly, Dow Corning's contention that the included language "per the specifications and data sheets that are current at the time specified" should be interpreted to apply to any warranty it may have made is not persuasive for a couple of reasons. First because Weather Shield is not contending that the product they received did not conform to the specifications or data sheets that may have accompanied it. On the contrary, they are contending–to use the language that Weather Shield used in the email rejecting the suggestion of a disclaimer of a limited warranty–that Dow Corning was selling InstantGlaze to be a commercially effective bedding and glazing compound. Clearly the disclaimer was not effective in disclaiming such an express warranty if a jury is satisfied that such a warranty was intended as a basis of the parties bargain. What remains is Weather Shield's counter-claim cause of action for breach of express warranty. Weather Shield maintains

-3-

the burden of proof. The task is well described by Professor James J White as follows:

> At the outset, one should understand how a warranty lawsuit looks to a plaintiff's lawyer and how it differs from a suit against an "insurer" on the one hand and an allegedly negligent defendant on the other. If an insurance company insures against the loss of an arm, all the claimant need do to recover is show the bloody stump. If the same claimant wishes to recover in warranty from the seller of the offending chain saw, he has a much tougher row to hoe. Once the plaintiff has proven his injury, specifically, the loss of his arm, his troubles are just beginning. First, he must prove that the defendant made a warranty, express or implied, under 2-313, 2-314, or 2-315. Second, he must prove that the goods did not comply with the warranty, that is, that they were defective at the time of the sale. Third, he must prove that his injury was caused, "proximately" and in fact, by the defective nature of the goods (and not, for example, by his careless use of the saw). Fourth, he must prove his damages. Finally, the warranty plaintiff must fight off all sorts of affirmative defenses such as disclaimers, statute of limitations, privity lack of notice, and assumption of the risk.

J. White & R. Summers, Uniform Commercial Code (Hornbook) § 23 at 272 (1st ed. 1972).

# I

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise

genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II

### A

Weather Shield does not contest that there remains the sum of $292,559.00 owing for the balance of the equipment loan. (Def.s' Resp. to Pl.'s Mot. for Summ. J. 9.)  Dow Corning argues that this eliminates any genuine issue of material fact and as such Dow Corning is entitled to judgment on its breach of contract claim against Weather Shield for this amount. (Pl.'s Mot. for Summ. J. Br. 9.)  Weather Shield does, however, deny liability for this amount because its damages completely offset the amount due, and asserts that the proper way to handle this issue is to stipulate that the amount claimed by Dow Corning is to be offset by damages, if any, recovered by Weather Shield. (Def.s' Resp. to Pl.'s Mot. for Summ. J. Br. 9.)  As a result, Plaintiff's motion for summary judgment on its breach of contract claim regarding the amount owing on the equipment loan will be

granted.

## B

Dow Corning argues that Weather Shield's counterclaim is barred by Dow Cornings's limited warranty and limited remedy, with the sole warranty being that InstantGlaze "will meet the Dow Corning sales specifications in effect at the time of shipment" as contained in the parties' agreement, the Product Information Sheets, and the Technical Manual. (Pl.'s Mot. for Summ. J. Br. 9, Exs. G, I, O.) Dow Corning alleges that it specifically disclaims any other express or implied warranty of fitness for a particular purpose or merchantability. *Id.* at 10. Furthermore, Dow Corning notes that the exclusive remedy for breach of warranty is limited to refund of the purchase price or replacement of any product shown to be other than as warranted. *Id.* As noted above, Dow Corning allegedly disclaimed any liability for incidental or consequential damages and further warned that potential customers must test the InstantGlaze to ensure it works within the customer's particular application. Dow Corning contends that these exclusions and limitations are legally permissible and enforceable, Mich. Comp. Laws § 440.2316, and the documents and disclaimers contained therein are incorporated into the parties' agreement by the Sealant Products being "supplied per the specifications and data sheets that are current at the time of shipment." (Pl.'s Mot. for Summ. J. Br. Ex. O.) Because of this, Dow Corning argues that Weather Shield has not, and cannot, claim that InstantGlaze did not meet the sales specifications and even if it could it would then only be entitled to a refund of the purchase price of the particular drum at issue.

The creation of express warranties under Michigan's version of the Uniform Commercial Code is governed by Mich. Comp. Laws § 440.2313, which provides in relevant part:

(1) Express warranties by the seller are created as follows:
    (a) An affirmation of fact or promise made by the seller to the buyer which

-6-

relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
(c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he or she have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty . . . .

An express warranty may be created only between a seller and a buyer, and any such express warranty becomes a term of the contract itself. *See* Official Comment 2 to UCC § 2-313 (noting that "this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale"). The Michigan Supreme Court has long implicitly recognized that an express warranty is no different than any other term of the contract. *See Salzman v. Maldaver*, 315 Mich. 403, 412 (1946) (observing that "where a written contract is clear and unambiguous, parol evidence of prior negotiations and representations cannot be adduced to create an express warranty and thereby vary the terms of the contract"); *Murphy v. Gifford*, 228 Mich. 287, 297-98 (1924) (observing that "where there is a written contract containing an express warranty no other or different may be inferred").

Mich. Comp. Laws § 440.2313 clearly provides that express warranties are limited to statements, descriptions, representations, samples, and models that are "made part of the basis of the bargain." Nevertheless, "[t]he UCC does not require that express warranties be made a part of the written agreement of the parties, and express warranties may be added by proof of oral warranties so long as the writing is not itself a complete integration of the agreement." *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 422 (6th Cir. 1981) "However, any statements not

-7-

incorporated in the written sales agreement must be shown to be a part of the bargain of the parties before they can be recognized as express warranties." *Price*, 649 F.2d at 422. "The trier of fact must determine whether the circumstances necessary to create an express warranty are present in a given case." *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290 (6th Cir.1982). The fact that a buyer may have an "understanding" does not give rise to an express warranty under Mich. Comp. Laws § 440.2313 when no express statement of warranty has been made. *Latimer v. William Mueller & Son, Inc.*, 149 Mich. App. 620, 631 (Ct. App. 1986). Nor is a "general expression of opinion" sufficiently specific to create an express warranty under Mich. Comp. Laws § 440.2313. *McGhee v. GMC Truck & Coach Div., Gen. Motors Corp.*, 98 Mich. App. 495, 501 (Ct. App. 1980).

Under Michigan's version of the Uniform Commercial Code, advertisements and promotional literature can be a part of the basis of the bargain and thus constitute express warranty where they are prepared and furnished by a seller to induce purchase of its products and the buyer relies on the representations. *Kraft v. Dr. Leonard's Healthcare Corp.*, 646 F. Supp. 2d 882, 890 (E.D. Mich. 2009). If representations are made after the initial contractual arrangements, they may become warranties and need not be supported by consideration if it is otherwise reasonable and in order. *See* U.C.C. § 2-209.

Moreover, Michigan law permits a party to incorporate terms or documents from other writings into their contracts. *Robert Bosch Corp. v. ASC Inc.*, 195 F. App'x 503, 505 (6th Cir. 2006). Where a contract references another instrument for additional contract terms, it is as though the contents of the referenced writing had been repeated in the contract. *Forge v. Smith*, 458 Mich. 198, 208 n.21 (1998). Neither physical attachment nor specific language is necessary in order for a document to be incorporated into a contract, but the incorporating instrument must clearly evidence

an intent that the writing be made a part of the contract. *Id.* at 207-08. A party cannot later plead ignorance as an excuse if the contract is clear on its face that such terms were intended to be incorporated and failure to obtain an explanation of a contract demonstrates negligence. *Robert Bosch Corp.*, 195 F. App'x at 505.

Weather Shield argues that Dow Corning is incorrect on its application of the limited remedy and limited warranty provisions. Weather Shield alleges that there is a significant issue of material fact regarding the sales specifications applicable to the InstantGlaze product. Specifically, Dow Corning's "sales specifications" allegedly became part of the contract between the parties by virtue of inserting the phrase "products are supplied per the specifications and data sheets that are current at the time of shipment (current copies attached)" in the March 22, 2004 letter agreement between the parties. (Def.s' Resp. to Pl.'s Mot. for Summ. J. Ex. 14.) Dow Corning asserts that the "specifications and data sheets" are its InstantGlaze Window Assembly Sealant product information sheets used to describe the properties of InstantGlaze I and InstantGlaze II.

Weather Shield argues that there is a factual issue pursuant to Dow Corning's argument that it warranted only that "the product will meet the Dow Corning sales specifications in effect at the time of shipment" and that the only sales specifications relating to the products were that the products would be clear and free from gels/particles and that the plasticity would fall within the range of 0.85 through 1.25 mil for InstantGlaze I and 0.60 and 0.85 for InstantGlaze II. Weather Shield asserts that there is a factual issue as to whether the "sales specifications" identified by Dow Corning are the sales specifications applicable to the contract between the parties. Neither the product information sheets nor any of the literature published by Dow Corning for use by customers makes reference to appearance of plasticity as the sales specifications. (Def.s' Resp. to Pl.'s Mot.

for Summ. J. Exs. 2, 6, 23, 24.) Weather Shield alleges that a Dow Corning employee admitted that

Dow Corning was likely not testing for plasticity during the initial discussions between the parties

and also admitted that even though plasticity is important for customers to know, he was unaware

of any document given to customers that uses the alleged sales specifications and describes what

they are. *Id.* at 10. Weather Shield also contends that Dow Corning's representative to Weather

Shield was unable to identify the applicable sales specifications for the Instant Glaze product when

he was deposed in October 2009. *Id.* The sales specifications were later obtained by Weather Shield

during discovery in this litigation.

  Weather Shield argues that given the complete absence of any description of the sales

specifications in the product literature, it was justified in believing that the sales specifications were

not the hidden appearance/plasticity information but were, instead, the typical properties and

features of the product as found in the sales literature and product information sheets. (Def.s' Resp.

to Pl.'s Mot. for Summ. J. Exs. 23, 24.) As noted above, the plasticity of the product proved to be

the property that Weather Shield believes to be highly problematic in an automated assembly

process since the product also did not perform as represented. Weather Shield argues that it would

be unconscionable to allow Dow Corning to warrant only that its product met sales specifications

which, unknown to its customers, were something entirely different than set forth in the product

literature.

  Weather Shield further asserts that it did not have notice of Dow Corning's sales

specifications from the first shipment of the InstantGlaze by virtue of the fact that Dow Corning

supplied certificates of analysis with the product.  (Def.s' Resp. to Pl.'s Mot. for Summ. J. Ex. 18.)

Upon reviewing the certificates of analysis that were provided, Weather Shield contends that there

is no reference whatsoever to the term "sales specifications." Furthermore, until Weather Shield became aware of the consequence of variations in plasticity, the fact the information was listed on a certificate of analysis was meaningless to Weather Shield and certainly did not put it on notice that Dow Corning considered it to be one of only two factors subject to its warranty. As a result, there is an issue of whether Dow Corning's sales specifications that were not furnished to Weather Shield are the sole subject of its warranty or whether all of the typical properties and features of the product as set forth in the literature are the subject of the warranty.

In addition to the factual issue regarding what attributes of the product were subject to the warranty, Weather Shield asserts that there is an issue regarding whether the warranty disclaimers and damage limitations found in the product literature are part of the contract between the parties. As noted above, during the contract negotiations between the parties, Dow Corning included similar warranty disclaimers and damage limitations as part of the general terms and conditions of sale. Weather Shield objected to these disclaimers and the damage limitation explaining that since Dow Corning was selling the InstantGlaze as a bedding/glazing compound, it could not avoid responsibility for it being used in that way. Weather Shield also explained that it was unwilling to accept reimbursement for the product as the only remedy. (Def.s' Resp. to Pl.'s Mot. for Summ. J. Ex. 12.) Based on Weather Shield's objections, the terms and conditions were removed from the original letter agreement signed by the parties.  (Pl.'s Mot. for Summ. J. Br. Ex. O.)

Weather Shield asserts that by now arguing that the warranty disclaimer and limitation of damages provisions preclude Weather Shield's claim, Dow Corning is attempting to "sneak through the back door" what it could not achieve in its direct negotiations with Weather Shield. Since warranty exclusions and damage limitations must be conspicuous, Mich. Comp. Laws § 440.2316,

-11-

and not unconscionable, Mich. Comp. Laws § 440.2719, Weather Shield argues that it is inappropriate to allow this back door approach. Weather Shield contends this is particularly so where the product sheets, to the extent they are incorporated into the contract by reference, are only incorporated "per the specifications and data sheets" because where a written contract refers to another writing for a particularly designated purpose, that other writing becomes part of the contract only for the purpose specified. C.J.S. Contracts § 316. There is no specific reference to the limited warranty or damage limitations also being incorporated into the contract. As a consequence, Weather Shield argues that Dow Corning cannot rely upon the warranty exclusions or damage limitations and Weather Shield is entitled to pursue its full scope of relief for breach of contract and breach of warranty.

Dow Corning asserts in its reply that the parties' negotiation of the October/November 2003 agreement is a red herring, and that the agreement was amended on March 22, 2004 to specifically provide that "Products are supplied per the specifications and data sheets that are current at the time of shipment . . . ." (Pl.'s Mot. for Summ. J. Br. Ex. A.) As a result, Dow Corning contends that this plain and unambiguous language is controlling, and does not appear in the parties' earlier and superseded 2003 agreement. The March 22, 2004 letter agreement is a new, independent contract which replaced the prior agreement after the parties renegotiated to include the financing of twelve additional pumps. The March 22, 2004 letter agreement also states that it replaces the pricing letter agreement from November 24, 2003. Despite Weather Shield's representation to the contrary, Dow Corning argues that the two agreements are not subject to the same conditions and limitation of remedies.

Weather Shield made it apparent in the first letter agreement negotiations that the exclusion

-12-

of the limited warranty and limited remedy provisions was important; Dow Corning likewise made
it apparent that the limited warranty and limited remedy were important provisions to keep in the
agreement.  In negotiating the second agreement, the record does not reflect that Weather Shield
objected to the incorporation by reference of the specifications and data sheets. However, the
reference to the "specifications and data sheets that are current at the time of shipment" creates a
genuine issue of material fact as to what was included by reference, when viewing the facts in a light
most favorable to Weather Shield. Indeed, the only disclaimer included to the March 24, 2004 letter
agreement is the equipment warranty disclaimer and limitations of liability regarding the equipment,
not the sealant products. In the event Weather Shield relied on Exhibits A and B to the March 22,
2004 agreement as the included "current copies" of the specifications and data sheets, there is no
mention of a limited warranty or limited remedy regarding the sealant products. Summary judgment
is inappropriate where a contract is ambiguous and a party opposing the motion has raised a genuine
issue of material fact, or where its meaning must be determined by "extrinsic unconceded facts."
*NILAC Int'l Mktg. Group v. Ameritech Servs., Inc*., 362 F.3d 354, 355 (6th Cir. 2004); *Extrusion
Painting, Inc. v. Awnings Unlimited, Inc*., 37 F. Supp. 2d 985, 994-95 (E.D. Mich. 1999) (citing *S.C.
Gray v. Ford Motor Co.*, 92 Mich. App. 789 (Ct. App. 1979). Whether the purpose of the reference
to the product "specifications and data sheets" was intended to also reach the unreferenced limited
warranty or unwritten express warranty, or only intended to include the portions of the product
information sheets relevant to the physical properties of the InstantGlaze products should be decided
by the trier of fact.

Furthermore, there is a reasonable question of fact regarding whether Dow Corning expressly
warranted that the sealant products would meet Weather Shield's needs, which were conveyed to

-13-

Dow Corning and identified by Dow Corning's representative at the product testing. More specifically, Dow Corning's InstantGlaze Customer Trial Summary from January 15, 2003 enumerates Weather Shield's needs as (1) creating a finishing gap of 1/16" between the glass and sash; (2) having instant green strength; and (3) ensuring no squeeze out. (Def.s' Supp. Br. Ex. 5; see also Pl.'s Mot. for Summ. J. Ex. J - InstantGlaze Sales Material,  Based on the facts presented when viewed in a light most favorable to Weather Shield, it remains for the factfinder to decide whether Weather Shield can meet the burden of proof to establish whether Dow Corning's identification of these three characteristics is appropriately elevated to an express warranty that the products supplied would meet these requirements, and that the representations were made as the basis of the bargain. Additionally, if Weather Shield meets this burden, it is in the province of the factfinder to decide whether the breach of express warranty is what caused the sealant products' failure during and after application.  Accordingly, Plaintiff's motion for summary judgment on this issue will be denied.

### C

The purpose of the doctrine of implied warranty of fitness for use, by contrast to an express warranty, is to promote high standards in business and to discourage sharp dealings. *Wade v. Chariot Trailer Co.*, 331 Mich. 576, 581 (1951). The Michigan statutes also provide for exclusion or modification of these implied warranties in certain instances. *In re Second Chance Body Armor, Inc.*, 417 B.R. 750, 758 (Bankr. W.D. Mich. 2009). The existence of an implied warranty of fitness for a particular purpose is contingent on two general facts. *Price Bros. Co.*, 649 F.2d at 423.  First, the seller must be aware at the time of contracting of a particular purpose for which the buyer intends to use the goods. *Id.* Second, the buyer must rely on the seller's skill or judgment to select or furnish goods suitable for that particular purpose. *Id.*

-14-

The Michigan Uniform Commercial Code states that the implied warranty of merchantability may be excluded or modified by language that mentions merchantability and, in case of a writing, is conspicuous. Mich. Comp. Laws § 440.2316(2). The implied warranty of fitness for a particular purpose may also be excluded or modified if the exclusion is in writing and is conspicuous. *Id.* The Michigan U.C.C. further provides:

> (3) Notwithstanding subsection (2):
>     (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and
>     (b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and
>     (c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade . . . .

Mich. Comp. Laws § 440.2316(3). Because warranties of fitness for buyer's intended use arise by implication they may also be negated by contrary contractual terms. *McGhee v. GMC Truck & Coach Division*, 98 Mich. App. 495, 500 (Ct. App. 1980).

Dow Corning contends that Weather Shield's implied warranty of fitness for a particular purpose or use claim is illusive in light of the pre-contract testing of InstantGlaze done by Weather Shield. Furthermore, this extensive testing of the InstantGlaze product, its properties, and its applications with various equipment  then continued throughout the parties' relationship while Weather Shield continued to purchase InstantGlaze. Based on its testing, Weather Shield moved from InstantGlaze I to Instant Glaze II and then to InstantGlaze WS, which Dow Corning argues now makes it impossible for Weather Shield to claim that it relied on Dow Corning's skill and judgment to select or furnish goods for Weather Shield's particular purpose. Dow Corning also

asserts that this extensive testing precludes any implied warranty from arising with respect to the defects that such examinations ought to have revealed.

Weather Shield contends that Dow Corning reviewed Weather Shield's manufacturing process and advised Weather Shield that its products would work within its process utilizing the equipment that Dow Corning recommended. Weather Shield advised Dow Corning that it had specific requirements for the finished gap between the glass and sash, the instant green strength, and the absence of squeeze out or clean up. Dow Corning, through its sales personnel and literature, represented that its product would meet Weather Shield's requirements.

Based on Weather Shield's extensive pre- and post-agreement testing of the InstantGlaze products as well as its continued use and purchasing based on the results of the testing, it cannot satisfy the second requirement in order for of an implied warranty of fitness for a particular purpose to exist. Although Weather Shield may have inquired as to the Dow Corning products available that would be suitable for their particular purpose, because of the extensive pre-purchase testing it did with the product in its own application it cannot now argue that it relied on Dow Corning's unique skill or judgment to select or furnish InstantGlaze as suitable for that particular purpose. Furthermore, Weather Shield is precluded from asserting an implied warranty with regard to defects which its pre-agreement examination and testing ought to have revealed. As a result, Plaintiff's motion for summary judgment as to Defendants' claim for breach of implied warranty of fitness for a particular purpose will be granted.

**D**

Dow Corning asserts that Weather Shield should be sanctioned due to spoliation of evidence. Two components of Weather Shield's damage claims were allegedly incurred to repair damaged

-16-

doors on two condominium units (the "Portside Builder's claim" of $51,129.75) and to cap beading in the field in response to complaints about water leakage (the "Cap beading in the field" claim of $84,995.04). Dow Corning alleges it did not receive notice regarding these alleged problems before the repairs were made. (Pl.s' Mot. for Summ. J. Br. Ex. S.) Dow Corning asserts that it now has no way to inspect the windows and doors to determine what caused the problems, which is something Weather Shield allegedly agrees would have been fair and reasonable to permit. *Id.* Additionally, Dow Corning notes that Weather Shield acknowledged that the field service technicians do not typically identify the cause of the customer complaint, resulting in repair records not providing useful information. (Pl.s' Mot. for Summ. J. Br. Ex. A.) Dow Corning also asserts that Weather Shield admittedly does not know what caused the Erdman pump failures, and that Dow Corning was not notified when the pump was replaced nor did Weather Shield keep the failed pumps. It is uncertain whether Weather Shield informed Dow Corning that Erdman claimed that some pump failures were not covered under warranty, according to Dow Corning.

Dow Corning alleges that this conduct is sanctionable. A party seeking an adverse inference instruction or other sanction for failing to preserve evidence must establish that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed "with a culpable state of mind;" and (3) the destroyed evidence was relevant to the party's claim or defense "such that a reasonable trier of fact could find that it would support that claim or defense." *Forest Labs., Inc. v. Caraco Pharm. Labs., Ltd.*, No. 06-CV-13143, 2009 WL 998402, at *1 (E.D. Mich. Apr. 14, 2009). Dow Corning alleges that all three factors are established here.

First, the obligation to preserve evidence arises when the party "has notice that the evidence

-17-

is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id.* at *2. If Weather Shield was having as many problems as it claims with InstantGlaze in its manufacturing process, Dow Corning alleges that Weather Shield should have known that future litigation was possible and that the only evidence regarding a significant portion of its damages may be relevant to such litigation.

With regard to the second element of culpability, "failures to produce relevant evidence fall 'along a continuum of fault - ranging from innocence through the degrees of negligence to intentionality' . . . ." *Id.* at *5 (citing *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009)). "Once the duty to preserve attaches, any destruction of [evidence] is, at a minimum, negligent." *Id.* A "culpable state of mind is established by ordinary negligence." *Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 379 (D. Conn. 2007). Dow Corning alleges that here, Weather Shield acted negligently at the very least in repairing the windows and doors in the field without first giving Dow Corning an opportunity to inspect the problem.

Dow Corning argues that the third element of relevance is also satisfied here. Weather Shield allegedly neither permitted Dow Corning to inspect the windows and doors, nor preserved the crucial evidence making it impossible to gauge to what extent, if any, other factors such as manufacturing defects, incorrect installation, or improper maintenance were potential causes of the alleged failures.

Furthermore, Dow Corning argues that under the U.C.C., a buyer is barred from a remedy for breach of warranty if that buyer fails to provide notice within a reasonable time. M.C.L. 440-2607(3)(a). Dow Corning argues that here, Weather Shield not only failed to provide reasonable notice but often times provided no notice at all until mid-2008, which was a significant time after

the alleged breaches had occurred and after Dow Corning demanded repayment of the loan. (Pl.'s

Mot. for Summ. J. Br. Ex. D.) Dow Corning seeks dismissal of these portions of Weather Shield's

damages claims as a sanction to "adequately level the playing field."

Weather Shield argues that the request for dismissal of these damages claims is misplaced.

Weather Shield alleges that it has not destroyed all the evidence as claimed by Dow Corning. While

it did fix leaks by cap-beading windows and doors in response to complaints by customers, it left

in place the repaired windows and doors other than the ones at Portside which could, if desired, be

inspected to determine the condition of the window and door beneath the repair to determine if the

leak was caused by factors other than InstantGlaze. According to Weather Shield, the Dow Corning

employees deposed in this matter are able to differentiate between the InstantGlaze and the silicone

cap beading material should they so desire. (Block Dep. 56:1-25, June 9, 2010; Lipp Dep. 21-22,

June 8, 2010.) Dow Corning additionally notes that Weather Shield has acknowledged that cap-

beading began in its plant as a precautionary measure regardless of whether a particular door

actually needed such cap-beading, making it difficult to discern whether it is repair cap-beading or

precautionary cap-beading.

Furthermore, Weather Shield alleges that it provided photographs to Dow Corning of the

Portside Builder's project and the records of all of the other repairs so that the problems could be

seen, the locations of the repairs could be determined, and relevant individuals could be deposed.

Dow Corning asserts that it was not notified of the Portside Builder's door damages before Weather

Shield settled the claim, leaving Dow Corning with no opportunity to inspect the doors. Dow

Corning contends that a CD of a few select photographs during a deposition that the Rule 30(b)(6)

deponent could not address does not satisfy one's obligation not to destroy evidence. Dow Corning

was allegedly made specifically aware of field failures in November 2004 and despite that notice

did not request that it be kept advised of ongoing repair issues. (Def.s' Resp. to Pl.'s Mot. for Summ.

J. Ex. 37.) Weather Shield contends that this gave Dow Corning notice early on regarding its

potential exposure to damage claims relating to field failures. Dow Corning contends that it was not

provided notice before repairs were made. Nevertheless, Weather Shield contends it complied with

any notice requirements under the Uniform Commercial Code by constantly advising Dow Corning

of product problems and that Dow Corning's failure to follow up regarding a process or procedure

to be brought in each time a problem arose should not serve to preclude Weather Shield from

seeking damages on these claims.

Weather Shield may have been negligent in its failure to notify Dow Corning as to the

necessary repairs, especially given its familiarity with the manufacturing problems with

InstantGlaze. In this case, however, Weather Shield's conduct does not rise to the level necessary

to impose monetary sanctions because it did not intentionally destroy evidence and some of the

evidence, albeit in a repaired state, is still available for examination. As a result, Dow Corning's

motion for summary judgment on this issue will be denied.

**E**

Dow Corning argued in its brief in support of its motion for summary judgment that Weather

Shield's damage claim for Erdman pump failures is barred by the agreement between the parties.

Weather Shield claims this argument completely ignores the fact that the equipment referenced in

the letter agreement between the parties is the Nordson Bulk Melter equipment being sold by Dow

Corning pursuant to the agreement, not the Erdman equipment for which Weather Shield seeks

damages in this litigation. As a consequence, Weather Shield contends that Dow Corning's request

-20-

that this element of Weather Shield's claim be dismissed should be rejected. Whether the language of the agreement was meant to include an agreement that Dow Corning would not be responsible for damages resulting from claims involving the Erdson pumps is an issue for the factfinder. Accordingly, Dow Corning's request for dismissal regarding the equipment warranty will be denied.

## F

Dow Corning contends that Weather Shield's lost amortization claim with respect to 1199 is unsupportable. Weather Shield does not disagree. Accordingly, Dow Corning's motion for summary judgment regarding Weather Shield's lost amortization claim will be granted.

## G

Finally, Dow Corning alleges that Weather Shield cannot prevail on its claims that InstantGlaze sealant was variable at times, causing issues for Weather Shield, because it cannot prove a causal connection between the allegedly unworkable InstantGlaze and Weather Shield's damages. Dow Corning alleges that Weather Shield's expert, Dr. Willard, testified that if Dow Corning had been able to produce InstantGlaze with a plasticity range of 0.94 to 1.06, that would have been acceptable for Weather Shield. (Pl.'s Mot. for Summ. J. Br. Ex. N.) According to Dow Corning, the overwhelming majority of Instant Glaze batches sold to Weather Shield, as charted by Dr. Willard, had a plasticity value that fell within this "acceptable range." (*Id.*) Dow Corning asserts that Weather Shield, to the extent it is entitled to any damages at all, is entitled only to damages resulting from the drums of InstantGlaze that fell outside Weather Shield's "acceptable range." Because Weather Shield allegedly does not keep records sufficient to determine which window or door was made using which drum of InstantGlaze, Dow Corning contends that it cannot tie its damages to "unacceptable" Instant Glaze and, as a result, Weather Shield's damages claims fail.

-21-

Weather Shield asserts that Dow Corning's argument is misplaced. First, a significant portion of Weather Shield's damage claim (shims) relates to the InstantGlaze not having the green strength property set forth in Dow Corning's literature.  Weather Shield alleges that this has nothing to do with the manufacturing problems caused by variations in the plasticity of the material. Second, the lot selected InstantGlaze was not agreed upon by the parties until early 2006 after Weather Shield had struggled with the product for well over a year and had addressed problems in both the field and in the manufacturing process through cap beading windows and doors. Third, as noted by Dr. Willard, in at least 20 instances, no plasticity data was reported on certificates of analysis so as to enable any conclusion to be drawn regarding whether the drums represented by those certificates were in or outside the required plasticity range. Finally, the plasticity numbers shown on the certificates of analysis are not necessarily accurate because Dow Corning  allegedly did not test every drum and sometimes averaged those that were tested in order to produce a number. (Def.s' Resp. to Pl.'s Mot. for Summ. J. Ex. 33.) As a consequence of all of these facts, Weather Shield contends that it is entitled to proceed with respect to its claim that deficiencies in the InstantGlaze product caused it damages.

Weather Shield's possible claim on this issue is, however, more limited than Weather Shield suggests. Weather Shield made requests for product within a particular range of plasticity well into the agreement between the parties. Dow Corning honored these requests despite not being contractually required to do so. Dr. Willard's expert opinion regarding the plasticity of the sealant is relevant only to the extent he is suggesting that InstantGlaze meeting the plasticity range of .94 to 1.06 mil–which is narrower than any of the agreed-upon ranges for InstantGlaze I, InstantGlaze II, and InstantGlaze WS–is necessary to producing a commercially useable glazing product as

Weather Shield contends Dow Corning represented.  There are issues of fact as to whether the evidence regarding green strength deficiencies and the need for the narrow range of plasticity for the product supplied are sufficient to sustain Weather Shield's claim of damages.  As a result, Dow Corning's motion for summary judgment will be denied.

### III

Accordingly, it is **ORDERED** Plaintiff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 18, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 18, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

-23-